IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| ALLEGHENY VALLEY BANK OF PITTSBURGH, *a Pennsylvania financial Institution,* | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 13-818 Chief Magistrate Judge Maureen P. Kelly |
| POTOMAC EDUCATIONAL FOUNDATION, INC., *a Delaware Corporation doing business as* UNIVERSITY OF FAIRFAX; VIENNA EDUCATIONAL SERVICES, INC., *a Delaware Corporation;* CHRISTOPHER V. FEUDO, *an individual*; ROGER C. GURNER, *an individual*; HUGH KOMINARS, *an individual*; THOMAS SAPIENZA, *an individual*; WILLIAM J. SOLOMON, *an individual*; DAVID OXENHANDLER, *an individual*; JOAN DALY, *an individual,* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Re: ECF No. 58 |
| Defendants. | ) ) | |


## OPINION

**KELLY, Chief Magistrate Judge**

Pending before the Court is the "Motion to Dismiss Under Rule 12(b)(2) and 12(b)(6)

and/or in Alternative Motion for Summary Judgment, Filed on behalf of Christopher V. Feudo,

Roger A. Gurner, Hugh Kominars, Thomas Sapienza, William J. Solomon, David Oxenhandler

and Joan Daly," (ECF No. 58), seeking dismissal of this action against each of the individual

defendants for lack of *in personam* jurisdiction, failure to state a claim for breach of contract, and

because Plaintiff's claims for negligence and negligent misrepresentation are barred by the "gist

of the action" doctrine.

For the following reasons, the Motion to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is granted as to Christopher V. Feudo, Roger A. Gurner, Hugh Kominars, Joan Daly and David Oxenhandler, but is denied as to Thomas Sapienza and William J. Solomon. The Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state at claim at Counts I and II (Breach of Contract) is granted as to Defendants Sapienza and Solomon. The Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim at Count III (Negligence and Negligent Misrepresentation) is granted as to Defendant Sapienza and is denied as to Defendant Solomon.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Allegheny Valley Bank of Pittsburgh ("Plaintiff"), a Pennsylvania financial institution, commenced this action with the filing of a Complaint (ECF No. 1) against Potomac Educational Foundation, Inc., d/b/a/ University of Fairfax (the "University") and Vienna Educational Services, Inc., a non-profit organized under the laws of the State of Delaware, with headquarters in the County of Fairfax, in Vienna, Virginia, (collectively, "the University Defendants"). Plaintiff also names as defendants Christopher V. Feudo, Roger A. Gurner (incorrectly identified as "Roger C. Gurner"), Hugh Kominars, Thomas Sapienza, William J. Solomon, David Oxenhandler and Joan Daly (the "Individual Defendants").[1]

The Individual Defendants initially responded to the Complaint by filing a Motion to Dismiss under Rule 12(b)(2) and 12(b)(6) for Lack of Jurisdiction and Failure to State a Claim. (ECF No. 34). Defendants argued that this Court lacked personal jurisdiction over Defendants Feudo, Daley, Gurner and Kominars, who are residents of Virginia; Defendant Oxenhandler,

---

[1] An additional claim for negligence and negligent misrepresentation was asserted against Richard L. Hendershot, CPA, P.C., but the claim has been voluntarily dismissed. ECF No. 25.

who is a resident of Colorado; and Defendant Solomon, who is a resident of New York. The Court permitted the parties to conduct discovery relative to the issue of this Court's exercise of personal jurisdiction over each of the Individual Defendants, as well as the applicability of the fiduciary shield doctrine, a defense asserted on behalf of the Individual Defendants. (ECF No. 55). At the close of limited initial discovery, Defendants filed the pending Motion to Dismiss and/or in the Alternative Motion for Summary Judgment, on behalf of all Individual Defendants. (ECF No. 58). The parties have fully briefed the issues and the Motion is now ripe for consideration.

### A. Loan Agreements and Alleged Financing Irregularities

This dispute stems from two Loan Agreements executed by the Defendant University, to provide financing for software systems and equipment leases to be used by the Defendant University's graduate studies program in HIPAA Compliance.[2]

Loan Agreement No. 1 was in the principal amount of $262,960.00, and was entered into between the Defendant University and AEL Financial, LLC, an Illinois financial institution. Under Loan Agreement No. 1, the Defendant University agreed that all of the information provided to the lender was true and correct, and prepared in accordance with generally accepted accounting principles. The agreement transferred and granted a license to the lender in all of the Defendant University's rights to use the software, goods or products after the occurrence of an "Event of Default." AEL's security interest in the collateral was registered with a UCC Financing Statement filed with the Delaware Department of State on September 6, 2011.

---

[2] For the purposes of the pending motion, the facts alleged in the Complaint unrelated to the jurisdictional issues, particularly with respect to the underlying transactions, are accepted as true and all reasonable inferences are drawn in favor of the Plaintiff. N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J., 760 F.3d 297, 302 (3d Cir. 2014).

On September 8, 2011, Allegheny Valley Bank and AEL entered into an Assignment Agreement, whereby AEL assigned to Allegheny Valley Bank all of its rights, title and interest in Loan Agreement No. 1, and in any and all collateral for the loan, as well as in all payments due under the Loan Agreement. An Amendment to the UCC Financing Statement was filed in the Delaware Department of State, identifying Allegheny Valley Bank as the secured party to the previously designated loan collateral.

One year later, the University and Allegheny Valley Bank entered into Loan Agreement No. 2, a second financing transaction, by way of an equipment "Lease Agreement" for the principal amount of $296,670.60. The terms of the Lease Agreement gave Allegheny Valley Bank a purchase money security interest in the equipment, and the Defendant University was obligated to keep the equipment free of all liens and encumbrances. Allegheny Valley Bank perfected its security interest in the equipment by filing UCC Financing Statements in Virginia, Maryland and Pennsylvania.

Allegheny Valley Bank, as assignee for Loan Agreement No. 1, and as direct lender for Loan Agreement No. 2, alleges that the Defendant University, with the participation of the Individual Defendants, presented financial statements that misrepresented the value of the software and equipment, and grossly overstated the value of the Defendant University's assets at approximately $12 million dollars. In addition, Allegheny Valley Bank alleges that the Defendant University participated in a scheme to improperly transfer funds to entities in which some of the Individual Defendants had a personal interest. In particular, some funds were transferred to Secureant, an entity for which Defendant Feudo acted as President and CEO, and some funds were transferred to Titan Youth Development Co. ("Titan"), an entity for which Defendant Solomon acted as President. At the time certain transfers were made, both men were

serving as members of the University's Board of Directors, with Defendant Feudo serving as President of the University and Defendant Solomon serving as Treasurer of the University. Allegheny Valley Bank alleges the relationships with Secureant and Titan were not disclosed on any financial statements submitted to either AEL or Allegheny Valley Bank prior to entering into the Loan Agreements.

Allegheny Valley Bank alleges that funds transferred to Secureant and Titan were then "pledged" back to the University; however, not all of the money pledged was paid to the University, leaving the University substantially undercapitalized. The pledges were listed on financial statements in their full value as "pledged contribution receivables" or "donated property." In addition, the transactions were structured and then depicted on financial statements so that it would appear that new independent capital flowed from Secureant and Titan to the University, to lend credence to line items for future "pledged contributions," which were listed at full value.

In December 2012, the Defendant University failed to pay amounts due under the loan documents. Allegheny Valley Bank received notice that the Defendant University's bank account had been "frozen" as a result of default on a loan held with another financial institution. Allegheny Valley Bank also learned that the representations made by the Defendants regarding existing and future capital were false. Further, upon completion of a sale of the Defendant University and its assets, Allegheny Valley Bank learned the software and equipment in which it held a security interest had "little residual value." Allegheny Valley Bank has been unable to collect any amounts due it under Loan Agreement Nos. 1 and 2.

With particular relevance to the pending Motion to Dismiss, Allegheny Valley Bank alleges that the Defendant University, by and through its officers and directors, breached its duty

under the Loan Documents by misreporting the financial status of the Defendant University in such a manner as to conceal the true financial condition to both AEL and Allegheny Valley Bank. Allegheny Valley Bank seeks to hold the Individual Defendants jointly and severally liable for breach of contract, "after allowing for the piercing of the corporate veil of the University," to permit recovery of the amounts of the loans, plus additional damages provided for under the loan documents. Alternatively, Allegheny Valley Bank alleges that as a result of the Individual Defendants' conduct, it sustained damages arising out of their negligent misrepresentation of the Defendant University's financial condition. Allegheny Valley Bank alleges that the Individual Defendants breached their fiduciary duties to the University by acting to conceal the relative insolvency of the University in order to induce the banks to enter into loan transactions, and otherwise failed to report material information regarding their own personal interests in University financial transactions.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a party to seek dismissal of a complaint or any portion of a complaint for lack of personal jurisdiction over the defendant. In ruling on a Rule 12(b)(2) motion, "a court must accept the plaintiff's allegations as true and draw in the plaintiff's favor all reasonable inferences supported by the well-pleaded factual allegations." Arrington v. Colortyme, Inc., 972 F. Supp.2d 733, 739 (W.D. Pa. 2013) (citing Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 151 n. 1 (3d Cir. 1992)). The court need not limit the scope of its review to the pleadings and instead must consider affidavits and other competent evidence submitted by the parties. Patterson by Patterson v. F.B.I., 893 F.2d 595, 603–04 (3d Cir. 1990); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir. 1984). Once the

defendant raises a question of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); Metcalfe v. Renaissance Marine Inc., 566 F.3d 324, 330 (3d Cir. 2009).

### B. Rule 12(b)(6)

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint: first, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679). The third step of the sequential evaluation requires this Court to consider the specific

nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210–11; see also Malleus, 641 F.3d at 560. This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss. Fowler, 578 F.3d at 212; see also Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563, n.8.

### C. Rule 56(c)

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Turner v. Schering–Plough Corp., 901 F.2d 335, 340 (3d Cir.1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323–24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322–23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.    DISCUSSION

### A.  Motion to Dismiss Judgment for Lack of Personal Jurisdiction – Rule 12(b)(2)

Allegheny Valley Bank filed this case in the United States District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1332, alleging this Court has diversity jurisdiction, because none of the Defendants are residents of Pennsylvania. (ECF No. 1, ¶ 17). Generally, "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts." J. McIntyre Machinery, Ltd. v. Nicastro, ___ U.S. ___, ___, 131 S. Ct. 2780, 2787 (2011). However, a State "may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Daimler v. Bauman, ___ U.S. ___, ___, 134 S. Ct. 746, 754 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, ___ U.S. ___, ___, 131 S. Ct. 2846, 2853 (2011)).

Pennsylvania's long-arm statute permits its state courts to exercise personal jurisdiction over nonresident defendants "to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." See 42 Pa. C.S. § 5322. In other words, "a district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is … valid as long as it is constitutional." Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998), quoting Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

The due process inquiry turns on a defendant's contacts with the forum state. In making this analysis, personal jurisdiction may be either "general" or "specific," and both the quality and quantity of the necessary contacts differ according to which sort of jurisdiction applies.

General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. Due process for general personal jurisdiction requires a showing that the defendant has had continuous and systematic contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 412–13, 414 nn. 8 & 9 (1984), Rocke v. Pebble Beach Co., No. 13–1149, 2013 WL 5568727, at *2 (3d Cir. Oct. 10, 2013).

Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Mellon Bank, 960 F.2d at 1221. Specific personal jurisdiction comports with due process as long as the defendant has sufficient minimum contacts with the forum state. The due process inquiry must focus on "the relationship among the defendant, the forum, and the litigation." Rush v. Savchuk, 444 U.S. 320, 327 (1980) (quoting Shaffer v. Heitner, 433 U.S. 186 (1977)). It has long been recognized that minimum contacts exist where the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). "Put another way, when a defendant's conduct is such that he or she reasonably should have foreseen being haled into court in the forum, the necessary minimum contacts have been shown." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. Burger King, 471 U.S. at 476.

In challenging a court's general or specific jurisdiction over a defendant, the burden rests with the plaintiff to prove personal jurisdiction by a preponderance of the evidence. Control Screening LLC v. Tech. Application and Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012). This burden is met when the plaintiff sets forth a prima facie case for the exercise of personal

jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." <u>Mellon Bank</u>, 960 F.2d at 1223 (quoting <u>Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.</u>, 819 F.2d 434 (3d Cir. 1987)).

In the instant case, Allegheny Valley Bank concedes that, with the exception of Defendant Sapienza, this Court lacks general jurisdiction over each of the Individual Defendants.[3] Allegheny Valley Bank seeks to establish specific jurisdiction, relying upon the alleged tortious conduct of each Individual Defendant with regard to the underlying Loan Agreements. The proper exercise of specific jurisdiction in such a situation relies on the presence of three criteria. First, Allegheny Valley Bank must show that each Individual Defendant has "purposefully directed its activities" at the forum. <u>Burger King Corp.</u>, 471 U.S. at 472. Second, Allegheny Valley Bank's claims must "arise out of or relate" to at least one of those activities. <u>Helicopteros</u>, 466 U.S. at 414. Third, if these two prongs are met, the court must then consider whether exercising jurisdiction would "comport with fair play and substantial justice." <u>Burger King</u>, 471 at 476 (citing <u>Int'l Shoe</u>, 326 U.S. at 320).

In conjunction with this analysis, and to limit the effect of any Individual Defendant's personal contact with the forum, the Individual Defendants raise the "fiduciary shield doctrine" as a bar to this Court's exercise of personal jurisdiction. The fiduciary or corporate shield doctrine provides that "'[i]ndividuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts.'" <u>Gentex Corp. v. Abbott</u>, 978 F. Supp. 2d 391, 402 (M.D. Pa. 2013)(quoting <u>Bowers v. NETI Techs., Inc.</u>, 690 F. Supp. 349, 357 (E.D.Pa.1988)).

_____

[3] Defendant Sapienza concedes that this Court has general *in personam* jurisdiction over him. (ECF No. 59, p. 2 fn. 1).

While the Individual Defendants urge the blanket application of the fiduciary shield doctrine, "'[a] recognized exception to this general rule is that a 'corporate agent may be held personally liable for torts committed in the corporate capacity.'" Id., quoting <u>Mendicino v. Lotus Orient Corp.</u>, No. 10–1867, 2010 WL 4104580, at *7 (E.D. Pa. Oct. 19, 2010) and <u>Nat'l Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.</u>, 785 F. Supp. 1186, 1191 (W.D. Pa.1992). "This exception balances the traditional rule with 'the principle that, in Pennsylvania, corporate officers and directors are liable for the tortious acts the corporation commits under their direction or with their participation.' <u>Maleski by Taylor v. DP Realty Trust</u>, 653 A.2d 54, 63 (Pa. Commw. Ct.1994) (citing <u>Al–Khazraji v. St. Francis Coll.</u>, 784 F.2d 505 (3d Cir. 1986), *aff'd*, 481 U.S. 604, 107 S. Ct. 2022, 95 L.Ed.2d 582 (1987))." Id. "The public policy behind this rule is that 'unless jurisdiction is obtained over those corporate officers engaged in tortious conduct, they will merely repeat the conduct over and over in other corporate guises.'" <u>Weisshouse v. Modulo Cucine LLC</u>, No. 12-01899, 2013 WL 1729375, at *5 (W.D. Pa. Apr. 22, 2013)(quoting <u>Maleski v. DP Realty Trust</u>, 653 A.2d at 63).

As recently summarized by the United States Court of Appeals for the Third Circuit in <u>Cerciello v. Canale</u>, 563 F. App'x 924 (3d Cir. 2014), the application of the fiduciary shield doctrine is fact specific as to each defendant. "One particularly significant factor is the status of the employee as an officer or director of the corporation in question. *Cf.* <u>Maleski</u>, 653 A.2d at 62 ("To determine whether there is jurisdiction over a [nonresident] corporate officer or director... , it is necessary under this case-by-case approach to examine factors such as the officer's role in the corporate structure, the quality of the officer's forum contacts and the extent and nature of the officer's participation in the alleged tortious conduct."). <u>Cerciello</u>, 563 F. App'x at 927-28.

The fiduciary shield was found inapt and personal jurisdiction appropriate in Gentex Corp. v. Abbott, *supra*, where the defendant was "the principle and highest authority" in the principal defendant's corporate structure. "[H]e maintained several contacts with Pennsylvania in connection with these claims, including telephone calls in which he conducted business as the authoritative representative of [the corporation] with individuals he knew to be in Pennsylvania.... Defendant Abbott was ultimately responsible for the production and dissemination of the allegedly infringing materials as the 'central figure' in the corporation." Id., 978 F. Supp.2d at 403.

Where, however, a particular defendant has no contact with the forum in the course of the alleged tortious conduct, it cannot be said that he has purposefully directed his activities at the forum so as to warrant the exercise of specific jurisdiction. See, e.g., Rittenhouse & Lee v. Dollars & Sense, Inc., No. 83-5996, 1987 WL 9665, at *5 (E.D. Pa. Apr. 15, 1987) (where defendant has not had contact with Pennsylvania, negligent acts or omissions committed outside of Pennsylvania in a role as a shareholder or director are insufficient to exercise specific jurisdiction).

In this case, Allegheny Valley Bank seeks to invoke and extend the "participation theory" employed for individual tort liability to hold each Individual Defendant liable for breach of contract. However, while the participation theory exception to the fiduciary shield extends liability to torts committed by an officer of a corporation, "[u]nless the corporate officer extends promises in his individual capacity, the participation theory does not apply in the context of an

action for breach of contract."  Walsh v. Alarm Sec. Grp., Inc., 95 F. App'x 399, 402 (3d Cir. 2004).[4]

In addition, Allegheny Valley Bank urges that the Court "pierce the corporate veil" because of the "failure to adhere to corporate formalities," so that the University's contacts with the forum can be imputed to each Individual Defendant for purposes of liability for breach of contract.  (ECF No. 66, p. 12). While a corporate form will be disregarded when the entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. 1991), "in general, piercing the corporate veil is a means of assessing liability for the acts of a corporation against an equity holder in a corporation." Mosaica Educ., Inc. v. Pennsylvania Prevailing Wage Appeals Bd., 925 A.2d 176, 184 (Pa. Commw. Ct. 2007)(citing Hanrahan v. Audubon Builders, Inc., 614 A.2d 748, 752 (Pa. Super. 1992). In the absence of evidence that any of the Individual Defendants are equity holders in the University, piercing the corporate veil is not an appropriate remedy to sustain jurisdiction.

With these guiding principles, the Court must determine whether the exercise of specific jurisdiction is appropriate as to each Individual Defendant.

---

[4] For example, in Mellon Bank, 960 F.2d at 1223, the United States Court of Appeals for the Third Circuit determined that personal jurisdiction was established where each of the defendants had executed personal guaranty and surety agreements with a Pennsylvania bank, and had provided personal net worth documentation in the hope that the Pennsylvania bank would approve the financing sought by the contracting partnership.  "The actions of the defendants, therefore, knowingly created continuing obligations with a citizen of Pennsylvania." Id.

### 1. William B. Solomon

At all times relevant to this matter, Defendant Solomon, a New York resident, served on the Board of Directors of the Defendant University and, beginning in March 2012, served as its Treasurer. (ECF No. 58-1, ECF No. 66-1, pp. 13-18). While acting as Treasurer, Solomon "built" financial statements and spreadsheets detailing historical operations and purportedly examining sources of revenue, including grants, tuition, and real estate rental income. He included as assets "non-cash grants" and pledged "donations," which are alleged to have been worthless or falsely listed to inflate the value of the Defendant University.

With regard to the underlying Loan Agreements, Solomon signed the Lease Agreement with Allegheny Valley Bank on behalf of the Defendant University, and understood he was executing the agreement with a Pittsburgh, Pennsylvania financial institution. (ECF No. 66-1, pp. 18-20, 40-42). Solomon admits he also "spoke with a loan officer with Allegheny Valley Bank over the telephone," but insists this was in his capacity as Treasurer of the Defendant University and not on his individual behalf. (ECF No. 58-2).

While serving as Treasurer of the Defendant University, Solomon also served as President of Titan, and in furtherance of the alleged scheme to artificially inflate the books of the Defendant University, Solomon agreed to permit Titan to funnel money received from other sources to the Defendant University, and then record the money as new "grants" or "pledges" on the financial reports he prepared for the University. (ECF No. 66-1, pp. 26-31, 35, 39, 50). This relationship, and Titan's role as a mere conduit in the scheme to artificially inflate the value of the Defendant University, is alleged to have been hidden from Allegheny Valley Bank.

The evidence with regard to the transactions includes a University-prepared auditing statement, where Solomon represented a contribution for the year 2011 of $409,000 as stemming

from Titan's "general business operations." (ECF No. 58-14, pp. 1-2). However, Titan was a small youth organization, serving approximately two to three hundred middle school aged boys and girls, and typically operating with a budget of approximately "fifty to maybe it's a thousand." (ECF No. 66-1, p.28). By recording the pledge of $409,000, as well as substantial future pledges at full value, Solomon created the appearance that Titan was donating its own funds and not those of the University (obtained through bank loans) as cycled through a third-party.[5]

Under these facts, as developed at this early stage of the litigation, it appears Defendant Solomon was a key player in the procurement of Loan Agreement No. 2. He purposefully directed activities in Pennsylvania giving rise to Allegheny Valley Bank's claims by speaking with Allegheny Valley Bank over the telephone, executing the Loan Agreement, and by preparing financial statements that reflected an overstated value of the University. Solomon's activity was intended to induce lenders, including Allegheny Valley Bank, to enter into Loan Agreements with the University. Accordingly, as to Loan Agreement No. 2, and the claims arising therefrom in tort, Solomon should have reasonably anticipated being haled into Court in this jurisdiction to defend against Allegheny Valley Bank's allegations. Therefore, specific personal jurisdiction is established.

There is no evidence, however, that Defendant Solomon had any contacts in this forum related to Loan Agreement No. 1, which was originally executed between the Defendant University and AEL, an Illinois corporation. Specific jurisdiction is claim specific, and the court

---

[5] This scheme was also the subject of litigation with Congressional Bank, which alleged that it was induced by misrepresentations of the Defendant University, certain of the Individual Defendants and its accountants to enter into two loans totaling $1,000,000. That litigation appears to have been resolved. See, Congressional Bank v. Potomac Educational Foundation, Inc., No. 14 – 109 (E.D. Va. 2014).

is limited to hearing only those claims against the defendant that arise from the defendant's contacts with the forum state. Arrington v. Colortyme, Inc., 972 F. Supp. 2d 733, 740 (W.D. Pa. 2013). Under the circumstances alleged in the Complaint and established through discovery, specific personal jurisdiction is not established over Defendant Solomon with regard to Allegheny Valley Bank's claims for negligent misrepresentation as to Loan Agreement No. 1, which was executed outside of Pennsylvania by AEL, an Illinios financial institution, .

### 2. Christopher V. Feudo

Defendant Feudo is a Virginia resident. (ECF No. 58-9, p.2). Feudo served as president of the Defendant University since November 17, 2012, and as a member of the University's Board of Directors since 2010. (ECF No. 66-2, pp.3, 14; ECF No. 34-1, p. 1). Feudo also has a six percent interest in Secureant, a business that developed a software encryption product sometime before 2008, but has not acquired or distributed any additional assets or products since that time. (ECF No. 66-2, pp.8 – 9, 13). Feudo acknowledges that Secureant has not conducted business operations since 2008, has no cash assets, and possesses a single product for which there is no market. (ECF No. 66-2, pp. 14, 15-16, 22, 38).

In 2010, Victor Berlin, the founder of the Defendant University, asked Feudo to join the Board of Directors to assist with the accreditation process. (ECF No. 66-2, pp. 19 -20). Berlin approached Feudo with a plan to "license" Secureant's software. According to Feudo, the software would be licensed by a third entity (STS). The licenses would be "donated" to the University, to use as collateral to procure a bank loan. The loan money would then be paid to STS, to provide "grants" to Secureant, and the money would then be funneled back to the University as a "donation" from Secureant. (ECF No. 66-2, pp. 15-28). After the first "donation" of over $500,000, Feudo signed an agreement commemorating the terms and conditions of future

grants between STS and Secureant, totaling nearly $2.9 million over a 60-month period, all for licenses for software which, as explained by Defendant Solomon, had no real value. This agreement closely mirrors contributions Feudo, as President of Secureant, pledged to the University over a similar 60-month period. (ECF No. 66-2, pp. 29-33; 58-14, pp. 4-5). These pledges were then included in the financial records of the University at full value, but were never paid.

Under these facts, it would appear that Feudo extensively participated in the alleged tortious conduct to artificially inflate the value of the University. However, Allegheny Valley Bank has failed to present any evidence that Feudo had a single relevant contact with this forum. There is no evidence that Feudo participated in obtaining the bank loan, or that he knew the loan was procured from a Pennsylvania financial institution. There is no evidence that Feudo traveled to Pennsylvania or made phone calls to Pennsylvania in furtherance of the Loan Agreement. In short, there is no evidence that Feudo availed himself of this forum. Even under the flexible due process inquiry adopted in Rittenhouse, *supra*, the exercise of specific jurisdiction in such circumstances would not comport with due process. Id. at *5.

In response to this likely result, Allegheny Valley Bank urges that this Court "pierce the corporate veil" to find personal jurisdiction and liability. In Rittenhouse, 1987 WL 9665, at *6, Judge Scirica observed that specific jurisdiction over individual corporate defendants may be found where evidence reveals "that defendants have set up a sham corporate structure, that the corporations are alter egos of the individual corporate directors, or that defendants have successfully concealed assets in defendants not within this court's jurisdiction." However, Allegheny Valley Bank has not produced any evidence in support of its assertion that the University acted as Feudo's alter ego or that Feudo is a shareholder of the University and worked

to "set up a sham corporate structure."  Accordingly, in the absence of evidence that Feudo had contact with this forum in furtherance of the Loan Agreement, Allegheny Valley Bank has not met its burden to establish that the exercise of personal jurisdiction would comport with due process. <u>Mellon Bank</u>, 960 F.2d at 1223.

### 3.  David Oxenhandler

Defendant Oxenhandler was employed as the Defendant University's President for the period August 2010 through June 2012.  In that capacity, he executed Loan Agreement No. 1 with AEL, an Illinois corporation, and, later, was generally aware that the University borrowed money from a "leasing agency" located in Pennsylvania. (ECF No. 66-3, p. 3). Allegheny Valley Bank has produced no evidence that Oxenhandler participated in procuring Loan Agreement No. 2, or directed or participated in the assignment of Loan Agreement No. 1 to Allegheny Valley Bank.  Further, there is no evidence that Oxenhandler communicated in any way with Allegheny Valley Bank, either in writing, email or by phone.

Allegheny Valley Bank presents evidence that Oxenhandler was aware of the financing arrangements with Titan, Secureant and STS, as well as the funneling of money through each organization to the University.  To deflect personal liability, Oxenhandler testified that the architect of the transactions was Victor Berlin, and that all transactions were legitimate in the furtherance of research and education in the areas of HIPPA and other privacy/security related regulatory schemes.

As with Feudo, it appears that Oxenhandler was keenly aware of and participated in the overall financing scheme.  However, there is no evidence connecting him with Pennsylvania in pursuit of the transactions at issue and no evidence that Oxenhandler was a shareholder in the University and, therefore, there is no basis upon which to exercise specific jurisdiction over him.

### 4. Hugh Kominars, Joan Daly and Roger Gurner

The evidence connecting Defendants Kominars, Daly and Gurner to the transactions at issue is further attenuated. Allegheny Valley Bank has not produced any evidence that these three Individual Defendants had knowledge of or participation in the financial management of the Defendant University, or any of its purported partners. To establish specific jurisdiction over each of these Defendants, Allegheny Valley Bank argues that they were utterly negligent with regard to their duties as members of the University Board of Directors, and failed to meet the responsibilities imposed upon them pursuant to the University by-laws and/or Certificate of Incorporation. (ECF No. 66, pp. 11 -12).

Judge Scirica observed with regard to similar claims against shareholders and directors in Rittenhouse that "plaintiff's assertion of jurisdiction over these defendants for violating a fiduciary duty by failing to act is less convincing than an affirmative act for establishing that defendants purposely availed themselves of the privilege of conducting their affairs in Pennsylvania. Thus, although courts may appropriately consider an individual's corporate contacts with the forum under certain circumstances … due process is not served by using a corporate officer's nonforum corporate *inactivity* as a jurisdictional base." Rittenhouse & Lee, 1987 WL 9665, at *6 (italics added). Accordingly, in the absence of any evidence of affirmative conduct in pursuit of the Loan Agreement executed with Allegheny Valley Bank or contacts with this forum related thereto, Allegheny Valley Bank has not met its burden to establish the existence of personal jurisdiction over Defendants Kominars, Daly or Gurner.

### 5. Thomas Sapienza

As previously addressed, Individual Defendant Sapienza has conceded that his contacts with Pennsylvania are sufficient to confer personal jurisdiction over him by this Court.

For the reasons stated above, this Court finds it may exercise personal jurisdiction over Defendants Solomon and Sapienza.  However, Allegheny Valley Bank has not met its burden to establish personal jurisdiction over Individual Defendants Feudo, Oxenhandler, Kominars, Daly and Gurner.

**B.  Motion to Dismiss for Failure to State a Claim – Rule 12(b)(6)**

The Defendants also seek dismissal of Allegheny Valley Bank's Complaint against any remaining Individual Defendants pursuant to Rule 12(b)(6), contending Allegheny Valley Bank cannot sustain its causes of action for breach of contract, negligence or negligent misrepresentation.[6]

**1.  Breach of Contract – Counts I and II**

Defendants argue that because none of the Individual Defendants were parties to the Loan Agreements, none may be personally liable for breach of contract. See, Donohue v. Custom Mgmt. Corp., 634 F. Supp. 1190, 1200-01 (W.D. Pa. 1986)("It is a general rule in contract law that no person can be sued for breach of contract unless he is a party to the contract. It is also fundamental that a corporate officer cannot be held liable on a contract between the corporation and a third-party unless the corporate officer assumes a personal obligation in the contract itself." (citations omitted)).  See, also, Walsh v. Alarm Sec. Grp., Inc., 95 F. App'x 399, 402 (3d Cir. 2004).  Allegheny Valley Bank has not presented evidence that any Individual Defendant and, in particular, that Defendant Solomon or Sapienza, extended promises or personal guaranties to Allegheny Valley Bank with regard to the Loan Agreements.  Further, as previously noted, there is no evidence that any of the Individual Defendants were shareholders of the University so as to

---

[6] In light of this Court's finding that personal jurisdiction only exists as to Individual Defendants Thomas Sapienza and William J. Solomon, the Court need only consider the Motion to Dismiss for failure to state a claim solely as it relates to these two remaining Individual Defendants.

justify piercing the corporate veil for the imposition of personal liability for breach of contract. Accordingly, Defendants' Motion to Dismiss for failure to state a claims as to Counts I and II is granted.

### 2. Negligence and Negligent Misrepresentation – Count III

Defendants also seek dismissal of Allegheny Valley Bank's claims for negligence and negligent misrepresentation, claiming they are barred by the "gist of the action doctrine," because these claims arise out of the contracts at issue. (ECF No. 59, p. 16). "As a practical matter, the [gist of the action] doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Ellias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002). Whether the gist of the action doctrine applies to bar a claim is a question of law.

The Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine, but both the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted that it will do so. See, Williams v. Hilton Group, PLC, 93 F. App'x 384, 385–86 (3d Cir. 2004); Reardon v. Allegheny Coll., 926 A.2d 477, 485 (Pa. Super. 2007); eToll, Inc, 811 A.2d at 14. As acknowledged in Reardon, the Pennsylvania Supreme Court some forty years ago stated:

> To permit a promisee to sue his promissor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions. Most courts have been cautious about permitting tort recovery for contractual breaches and we are in full accord with this policy. See Developments in the Law—Competitive Torts, 77 Harv. L. Rev. 888, 968 (1964). The methods of proof and the damages recoverable in actions for breach of contract are well established and need not be embellished by new procedures or new concepts which might tend to confuse both the bar and litigants.

Reardon v. Allegheny Coll., 926 A.2d at 486 (quoting Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964)).

The gist of the action doctrine bars a tort claim, when (1) the claim arises from a contract between the parties, (2) the duties breached were created by the contract, (3) liability derives from the contract, or (4) where the success of the tort claim is wholly dependent upon the contract's terms. eToll, 811 A.2d at 19. When applying the gist of the action doctrine, the Pennsylvania Superior Court has explained that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Id. at 14 (quoting Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001)).

By their own admission, the Individual Defendants are not parties to the contract with Allegheny Valley Bank, and have no personal obligations thereunder.[7] Accordingly, the gist of the action doctrine does not bar Allegheny Valley Bank's negligence and negligent misrepresentation claims against Defendant Solomon. See Barker v. Hostetter, No. CIV.A. 13-5081, 2014 WL 1464319, at *17 (E.D. Pa. Apr. 15, 2014), citing Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc., No. 05–708, 2008 WL 1995305, at *13 (E.D. Pa. May 6, 2008)

---

[7] For this reasons, Defendants' reliance on First United Bank & Trust v. PNC Financial Services Group, Inc., 667 F. Supp.2d 443, 447 (M.D. Pa. 2009) is misplaced. In First United, the Court determined that *as to the contracting Defendant*, plaintiff's claims for negligence and negligent misrepresentation were barred by the gist of the action doctrine; however, the Court permitted plaintiff's tort claim for negligent misrepresentation against a non-contracting entity to proceed. Id. at 455-57 ("…Sterling is not a party to the Master Agreement, so First United is not necessarily attempting to allege justifiable reliance on representations made during contract negotiations that were subsequently merged into the Master Agreement….Accordingly, at this early stage of the case, the Court finds that First United has sufficiently alleged justifiable reliance on Sterling's misrepresentations and that the alleged reliance is not invalid as a matter of law.").

(finding that the defendants were unable to invoke the gist of the action doctrine to foreclose litigation of a conversion claim against them because they were not parties to the contract); Levert v. Philadelphia Int'l Records, No. 04–1489, 2005 WL 2271862, at *3 (E.D. Pa. Sept.16, 2005) (finding that the gist of the action doctrine did not apply to the defendant because he was not a party to any contract and there was no agreement between the parties).

### a. William J. Solomon

To the extent that Individual Defendant Solomon, a member of the Board of Directors and corporate officer, is proven to have actively participated in the torts alleged, liability is not precluded. See, e.g., Donsco Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir.1978)("[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort.... The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondent superior; it does not however relieve the individual of his responsibility.").

Defendants alternatively argue that Allegheny Valley Bank's claim for negligent misrepresentation fails because the evidence indicates that Allegheny Valley Bank had unrestricted access to the University's financial documents, including audits conducted by the University's independent auditors. However, at this early stage of the litigation, given the limited scope of discovery conducted thus far, it is premature to determine whether Allegheny Valley Bank may be able to sustain a claim for negligent misrepresentation against Defendant Solomon. Further, justifiable reliance, as an element of negligent misrepresentation, is typically a question of fact for the fact-finder to decide. First United Bank & Trust, 667 F. Supp.2d at

455. Accordingly, Defendants' Motion to Dismiss Allegheny Valley Bank's claims for negligence and negligent misrepresentation as to Defendant Solomon is denied.

### b. Thomas Sapienza

With regard to Individual Defendant Sapienza, Allegheny Valley Bank concedes that it cannot maintain a cause of action for negligence or negligent misrepresentation because Defendant Sapienza did not join the Board of Directors until a point in time after the Loan Agreements were executed. (ECF No. 66, p. 17). Therefore, Defendants' Motion to Dismiss Defendant Sapienza is granted.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss under Rule 12(b)(2) and 12(b)(6) and/or in the Alternative Motion for Summary Judgment, ECF No. 58, is granted in part and denied in part. An appropriate Order follows.

### **ORDER**

AND NOW, this 9th day of March 2015, upon consideration of Defendants' Motion to Dismiss under Rule 12(b)(2) and 12(b)(6) and/or in the Alternative Motion for Summary Judgment, ECF No. 58, and the briefs and exhibits filed in support and in opposition thereto,

IT IS HEREBY ORDERED that the Motion to Dismiss under Rule 12(b)(2) is GRANTED as to Defendants Christopher V. Feudo, Roger A. Gurner, Hugh Kominars, David Oxenhandler and Joan Daly, and DENIED as to Defendants Thomas Sapienza and William J. Solomon;

IT IS FURTHER ORDERED that the Motion to Dismiss Counts I and II (Breach of Contract) under Rule 12(b)(6) as to the remaining Individual Defendants William J. Solomon and Thomas Sapienza is GRANTED;

IT IS FURTHER ORDERED that the Motion to Dismiss Count III (Negligence and Negligent Misrepresentation) under Rule 12(b)(6) is GRANTED as to Defendant Sapienza and is DENIED as to Defendant William J. Solomon;[8]

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order it must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


cc:     All counsel of record by Notice of Electronic Filing

---

[8] The sole remaining claim as to the Individual Defendants is Allegheny Valley Bank's claim in Count III – Negligence and Negligent Misrepresentation as to Defendant William J. Solomon.